UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEBBIE CONSIDINA SMITH,

    Plaintiff,

v.                                                                                          Case No. 3:24cv48-MCR-HTC

NORTHWEST FLORIDA AREA
AGENCY ON AGING, INC.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Debbie Smith, proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint against her former employer Defendant Northwest Florida Area Agency on Aging, Inc., ("NWFLAAA") for race, gender, and religious discrimination under Title VII of the Civil Rights Act of 1964, age discrimination under the Age Discrimination in Employment Act ("ADEA"), and failure to accommodate under the Americans with Disabilities Act ("ADA"). Doc. 5. She also alleges NWFLAAA created a hostile work environment and retaliated against her. *Id.* Before the Court is NWFLAAA's supplemental motion to dismiss, Doc. 12. Upon consideration of the motion and Plaintiff's response, Doc. 14, the undersigned finds the motion should be GRANTED and this case be DISMISSED WITH PREJUDICE for failure to state a claim.

I.      BACKGROUND

The following facts are taken from Smith's amended complaint, Doc. 5, and are accepted as true for purposes of this Report and Recommendation:

Smith, a 66-year-old black female, began her employment at NWFLAAA in May 2019.[1]  In November 2019, she was promoted to "Benefit Counselor," and on January 3, 2022, she was promoted to "Intake Specialist."

Smith is a Baptist minister and received "numerous calls from clients during COVID-19 who were sick, fearful, and requesting prayer as family members were dying and being placed in nursing homes."  In either late 2019 or 2020, Anna Dyess, the Director of the NWFLAAA, heard Plaintiff praying and told her to stop because she "was loud."  Dyess "walked away and returned, harassing [Smith] about praying."[2]  Dyess "creat[ed] a hostile work environment with a co/worker and client" and treated her disparately because of the praying.  Her praying had not previously been a problem, as Director Amber McCool "never told [her] there was a problem with praying for/with elderly clients."

During the summer of 2020, all NWFLAAA employees in Smith's department worked from home.  Smith, however, "was not given a computer or allowed to work from home for four months."  She "requested a reasonable accommodation to help

---

[1] It appears Smith began her affiliation with NWFLAAA as a volunteer in 2017.  Doc. 5 at 6.
[2] Although Smith alleges this incident occurred in December 2019, elsewhere she states Dyess was not hired as the Director until November 2020.  *See* Doc. 5-1 at 1-2.

[her] see the computer screen better and remove the glare (larger screen and glare protector)." The request was made to an administrative director, supervisor Gwen McCastle, and Director Dyess. Smith was given a large-screen computer after a co-worker received one, months before her termination, but she was never given the screen protector. Smith asserts she has been legally blind since 2005, and the "administration was aware of [her] disability."

On December 14, 2020, Plaintiff entered the fax room, which was also where Dyess's office was temporarily located. Dyess motioned for Plaintiff to leave the room and close the door. Plaintiff went to the kitchen to wait and placed the document she wanted to fax upside down on the counter. Later that day, Dyess spoke to Plaintiff in an "unprofessional tone" and stated, "a letter in the kitchen indicated [Plaintiff] had violated a HIPAA rule for handling client personal health information." Dyess would not let Plaintiff "explain the circumstances" and told her she needed to complete three HIPAA courses or her employment would end. Plaintiff then contacted McCool, the EEOC, OSHA, and NWFLAAA's Board of Directors about Dyess's "efforts to threaten, discriminate, harass, and retaliate" against her, which resulted "in grievance hearings with favorable results."

On February 1, 2023, Smith had issues logging into a computer and contacted IT specialist Bryan Harrington. Harrington was rude and said Plaintiff "should already know how to do this and not have to call [him] to log into the computer."

Smith told McCastle about her interaction with Harrington. McCastle asked Smith if she had raised her voice to Harrington and Smith walked away. McCastle later told Smith to report to Dyess regarding the incident. Dyess questioned Smith regarding her conversation with Harrington and told her she would be penalized.

In March 2023, Smith contacted Harrington via email to report computer issues. Harrington told Smith he was busy and to contact IT Service Technology for assistance. Smith reported Harrington did not want to help her because she is a "dark skin-educated Black woman." Later, she noted that everyone had computer issues, but only she was told to contact IT service.

During a staff meeting on March 7, 2023, Dyess and Harrington informed employees a new program was being put in place that would monitor employees during the day. The staff was told they "would not be penalized if they were working but not on the computer during work hours." On March 13, 2023, Smith contacted McCastle to report she was having issues logging into the computer. Smith asserts it was "office procedure to contact a supervisor or fiscal assistant to clock in and request that the time be adjusted because of computer issues." McCastle accompanied Smith to a meeting with Dyess, where Dyess said Smith "was offline for an hour and fifty minutes and would have to prove [she] was working during that timeframe." Smith maintains she "was working from home that day," but her "computer was not working." Smith was "off work sick with physician

appointments" the next week, but she informed Dyess she would get her the information when she returned.

On March 22, 2023, Dyess contacted Smith via Zoom and told her she was terminated for falsifying the March 13, 2023, timesheet. Smith appealed the termination and requested a "full board hearing"; two of the board members felt Smith should be reinstated because she had never been reprimanded or warned, but she was still terminated.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must liberally construe Plaintiff's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.   DISCUSSION

The first problem with Smith's amended complaint is that Smith fails to separate her allegations into separate counts, making it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). NWFLAAA, thus, argues the amended complaint should be dismissed as a shotgun pleading, which fails to meet the basic pleading requirements set forth in Federal Rule of Civil Procedure 8. While the amended complaint is not a model of clarity, the undersigned finds it should be dismissed on the merits rather than on a procedural issue.[3] Even when reading the facts in Smith's favor and assuming they are intended to support all her claims, the amended complaint simply falls short.

The undersigned agrees with NWFLAAA, however, that Smith should not be allowed to amend as this Court already advised Smith of the deficiencies in her original complaint and gave her an opportunity to amend her allegations. Thus, because any new action would be time-barred, the motion to dismiss should be granted and the amended complaint dismissed with prejudice.

A. **Discrimination under Title VII and the ADEA**

To state a claim for discrimination under Title VII or the ADEA, whether based on race, gender, age, or religion, Smith must show that NWFLAAA acted with discriminatory intent. *See Hill v. MARTA*, 841 F.2d 1533, 1539 (11th Cir. 1988); *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000) (explaining

---

[3] Smith filed an opposition to the supplemental motion to dismiss in which she tries to identify the facts that support her retaliation, discrimination, and disability claims. Doc. 14. The opposition, however, also includes facts and documents which were not included in the amended complaint. Smith, however, cannot amend her allegations through an opposition. Thus, any additional facts and documents will not be considered. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Case No. 3:24cv48-MCR-HTC

that an employer may be liable for unlawful discrimination under three theories, one of which, as applicable here, is disparate treatment and a disparate treatment claim requires a showing of discriminatory intent). Smith can establish a prima facie case by presenting direct evidence of discriminatory intent or, if no direct evidence is available, Smith may rely on circumstantial evidence. *See Bailey v. DAS North America, Inc.*, 473 F. Supp. 3d 1310, 1326 (M.D. Ala. 2020).

Here, Smith fails to allege the existence of any direct evidence of discrimination. Smith does not allege, for example, that she was the subject of any derogatory comments based on a protected trait. *Cf. Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (only the most blatant remarks, such as a management memorandum saying, "Fire [plaintiff]—he is too old[,]" could constitute direct evidence of discrimination). Instead, Smith alleges, generally, that Harrington "spoke discriminatorily about [her] age," Doc. 5-1 at 3. This allegation is conclusory and not entitled to the presumption of truth. Regardless, Harrington was not responsible for Smith's termination. *See Robertson v. Riverstone Cmtys., LLC*, 849 F. App'x 795, 801 (11th Cir. 2021) (remarks that are not tied to a challenged employment decision or are made by non-decisionmakers do not qualify as direct evidence of discrimination) (citation omitted).

Smith's amended complaint is also devoid of facts supporting the existence of circumstantial evidence of discrimination. To establish a prima facie case of

discrimination based on circumstantial evidence, Smith must show (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) either she was replaced by a person outside her protected class or a similarly situated employee outside her class was treated more favorably; and (4) she was qualified to perform her job. *Bailey*, 473 F. Supp. 3d at 1326.

Smith alleges she is a 66-year-old black female who is of the Baptist faith; thus, she is a member of a protected class. She also alleges she was terminated; thus, she was subjected to an adverse employment action. Smith, however, has alleged no facts to show that she was terminated or treated less favorably in her employment because of a protected trait.[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (the plaintiff must first create an inference of discrimination through her prima facie case before the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action).

Smith, for example, has not identified any similarly-situated younger, non-female, non-Black or non-Baptist comparator who was treated more favorably than her. She does not allege that she was replaced by any such person. She does not allege that Dyess treated any such person more favorably for engaging in the same

---

[4] Smith's allegations regarding different treatment by Harrington when she asked for IT help did not alter her compensation or the terms, conditions or privileges of her employment and therefore cannot be actionable, even if true. *See Bailey*, 473 F. Supp. 3d at 1326. Regardless, Smith does not allege that Harrington treated white employees who needed computer help more favorably; instead, she alleges he treated *all* other employees who needed computer help more favorably than her.

Case No. 3:24cv48-MCR-HTC

or similar conduct. *See Campbell v. Mayo Clinic Inc.*, 2024 WL 713921, at *2 (11th Cir. Feb. 21, 2024) ("a similarly situated comparator will ordinarily have engaged in the same basic conduct as the plaintiff, will have had the same supervisor, and will share the plaintiff's employment or disciplinary history") (citing *Lewis v. City of Union City*, 918 F.3d 1213, 1227–28 (11th Cir. 2019) (en banc)).

Because Smith has failed to identify a valid comparator or allege any facts that plausibly support an inference of discrimination, she has not stated a claim for disparate treatment. *See, e.g.*, *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (affirming dismissal of disparate treatment claims under Title VII and the ADEA where plaintiff made vague references as to "younger males" but did not identify any similarly-situated comparators); *see also Booth v. City of Roswell*, 2018 WL 10798041, at *5 (N.D. Ga. Feb. 22, 2018) (recommending dismissal of disparate treatment claim under the ADA because plaintiff alleged no facts to support an inference that any city employees harbored discriminatory animus against people with disabilities or that plaintiff's alleged disability had anything to do with any disciplinary actions against him), *report and recommendation adopted*, 2018 WL 10798045 (N.D. Ga. Mar. 13, 2018), *aff'd*, 754 F. App'x 834 (11th Cir. 2018).

**B.    Reasonable Accommodation**

Smith also seeks to bring an ADA failure-to-accommodate claim. Under the ADA, "[a]n employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability—unless doing so would impose undue hardship on the employer." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a)). To state a claim for failure to accommodate, a plaintiff must show that: "(1) he is disabled; (2) he is a qualified individual, meaning able to perform the essential functions of the job; and (3) he was discriminated against because of his disability by way of the defendant's failure to provide a reasonable accommodation." *Russell v. City of Tampa*, 652 F. App'x 765, 767 (11th Cir. 2016) (per curiam) (citing *Lucas*, 257 F.3d at 1255). Smith has not made such a showing here.

As stated above, Smith alleges she is legally blind. Even assuming this allegation is sufficient to show Smith is disabled, Smith cannot establish a claim for reasonable accommodation unless she made a "sufficiently direct and specific" request for an accommodation. *Palmer v. McDonald*, 824 F. App'x 967, 979 (11th Cir. 2020). The request, at a minimum, must "explain how the accommodation requested is linked to some disability." *Id.* Here, although Plaintiff alleges she made multiple requests for a larger computer screen and protector to Dyess, McCastle, and

Goldsmith, she does not indicate when she made those requests or that she specifically asked for such items as an accommodation for her vision impairment.

Regardless, Smith admits she was ultimately provided a larger computer several months prior to her termination in March 2023. Even if she had to wait some period to receive the computer, "a delay in the provision of a reasonable accommodation does not constitute an ADA violation where the delay does not preclude the employee from performing the tasks of his employment." *Alabi v. Atlanta Pub. Sch.*, 2011 WL 11785485, at *12 (N.D. Ga. Sept. 26, 2011) (citing *Terrell v. USAir*, 132 F.3d 621, 627–28 (11th Cir. 1998). Smith does not allege she had any issues working on a computer with a smaller screen before being provided a larger one, much less that she could not complete her job-related tasks. *See Hartsfield v. Miami–Dade Cnty.*, 90 F. Supp. 2d 1363, 1373 (S.D. Fla. 2000) (holding that a delay in providing an employee with a closed circuit television device was not an ADA violation where the employee was able to work during the delay, albeit with some difficulty). Smith has not stated a claim for failure to accommodate under the ADA.

   C.   **Retaliation**

Retaliation claims under Title VII, the ADA, and the ADEA require a plaintiff to show: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the

protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). An employee has engaged in protected activity if she has either: (1) "opposed any practice made unlawful under the relevant statutes," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes." *Bailey v. City of Huntsville*, 517 F. App'x 857, 861 (11th Cir. 2013) (discussing the standard under Title VII and the ADEA and citing 42 U.S.C. § 2000e–3(a) and 29 U.S.C. § 623(d)); *accord Morgan v. Christensen*, 582 F. App'x 806, 809–10 (11th Cir. 2014) (discussing the standard under the ADA and quoting 42 U.S.C. § 12203(a)). To meet the burden of causation, a plaintiff must (1) provide sufficient evidence of knowledge of the protected activity, and (2) establish a close temporal proximity between this awareness and the adverse action. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Here, reading the amended complaint liberally, Smith claims to have participated in "grievance hearings" once around December 2020, after Dyess directed her to complete additional HIPAA training and, again, in May 2023, when she appealed her termination before the NWFLAAA's board of directors. Even assuming that conduct constituted protected activity, Smith fails to allege any facts showing that she was terminated for engaging in that conduct nor could she do so because the first hearing occurred more than 2 years before her termination and the second, after her termination. *See Bailey v. City of Huntsville*, 517 F. App'x at 861

(11th Cir. 2013) ("Where the plaintiff presents no other evidence to show causation and there is a substantial delay [i.e., over three months] between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."); *see also Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[W]hen an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.).

### D. Hostile Work Environment

The amended complaint also appears to raise a claim for hostile work environment, presumably based on Smith's "Baptist" religion. Doc. 5 at 7. "A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is *sufficiently severe or pervasive* to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (emphasis added) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In evaluating the objective severity of the harassment, courts consider the following factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1276.

Here, Smith's allegations are insufficient to show Dyess or anyone else engaged in discriminatory conduct that was sufficiently severe or pervasive. First, aside from the December 14, 2019, incident in which Dyess merely asked Smith to stop praying because she "was loud," Smith fails to identify any other potentially harassing behavior related to her religious beliefs. *See* Doc. 5-1 at 2. Moreover, Smith does not allege Dyess made any disparaging or insulting remarks regarding her religion. Finally, Smith does not describe how, if at all, Dyess's conduct interfered with her job performance. Thus, Smith has not stated a claim for hostile work environment. *See, e.g.*, *Jones v. United Space Alliance, LLC*, 170 F. App'x 52 (11th Cir. 2006) (finding plaintiff failed to establish a *prima facie* case of religious hostile work environment based on being told by a manager to remove lanyard with the name "Jesus" on it, not to leave his Bible on his desk, and to turn down the religious music he played, among others, because "none of the alleged incidents occurred on a repeated basis, none of the incidents were physically threatening or humiliating, and none interfered with [plaintiff's] job performance"); *see also Jamous v. Saint-Gobain Corp.*, 2016 WL 4206320, at *13 (N.D. Ala. Aug. 10, 2016) ("'[a] single incident in which [plaintiff] was told to stop reading the Quran" was not severe or pervasive enough to objectively alter the terms and conditions of plaintiff's employment, because it was neither frequent nor physically threatening or

humiliating, and there was no evidence the incident interfered with plaintiff's job performance).

Accordingly, it is RECOMMENDED:

1. That Defendant's supplemental motion to dismiss, Doc. 12, be GRANTED.

2. That this case be DISMISSED WITH PREJUDICE.

3. That the clerk close the file.

At Pensacola, Florida, this 25th day of June, 2024.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1.